**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DEIRTRA MCALLISTER,<br>*Plaintiff*,<br><br>v.<br><br>FAIRFIELD COUNTY BANK MHC CORP., et al.,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:24-CV-1481 (SVN)<br><br><br><br><br><br>September 24, 2026 |

**RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this removed disability discrimination action, Plaintiff Deirtra McAllister alleges that her former employers, Defendants Fairfield County Bank MHC Corp. ("Fairfield Bank"), now doing business as Ridgefield Bank a/k/a Ridgefield Bank Mortgage Corporation ("Ridgefield Bank") discriminated against her by terminating her employment after they became aware of her psychiatric medical condition. Plaintiff's complaint alleges that Defendants discriminated against her based on her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*. Plaintiff also brings state law claims for negligent misrepresentation and common law estoppel based on an alleged representation by Defendants that a progressive discipline policy would apply to certain employee conduct.

Defendants seek summary judgment on all of Plaintiff's claims, asserting that Plaintiff failed to provide (1) any evidence that Defendants discriminated against her and that she was terminated for the legitimate non-discriminatory reason of "force balancing" her register, which is not permitted under Fairfield Bank policy, and (2) that she was not an employee of Ridgefield

Bank. Defendants also argue that Plaintiff's own testimony makes clear that progressive discipline did not apply, mandating dismissal of her state law claims. Plaintiff opposes Defendants' motion.

For the reasons explained below, Defendants' motion for summary judgment is GRANTED in full.

## I. FACTUAL BACKGROUND

The following factual background reflects the Court's review of Defendant's Local Rule ("L.R.") 56(a)1 Statement, ECF No. 69; Plaintiff's L.R. 56(a)2 Statement, ECF No. 77[1]; Plaintiff's Statement of Additional Material Facts, ECF No. 78 ("Pl.'s Add'l Facts"); and all supporting materials. Unless otherwise noted, the following facts are undisputed.

### A. Plaintiff's Position and Condition

Plaintiff was hired as a teller for Fairfield Bank on March 15, 2021. ECF No. 69 ¶ 1. Defendant Ridgefield Bank is a separate and distinct corporate entity from Defendant Fairfield Bank, and Plaintiff is not, nor has ever been, employed by Ridgefield Bank (although Plaintiff contends that Ridgefield Bank "was a successor company" to Fairfield Bank). *Id.* ¶¶ 2–3; *see also* ECF No. 77 ¶¶ 2–3. Plaintiff was diagnosed, and treated for, psychiatric conditions—bi-polar disorder, anxiety, depression, and schizophrenia. ECF No. 69 ¶ 4; McAllister Decl., Ex. A, ECF No. 76 at 2, ¶ 5; McAllister Hartford Healthcare Patient Report, Ex. G, ECF No. 76 at 51–61; Pl.'s Dep. Tr., Ex. 3, ECF No. 67-1 at 21. Plaintiff's conditions can include paranoid thoughts. ECF No. 69 ¶ 5.

---

[1] D. Conn. Local Rule 56(a)2 requires that "[a] party opposing a motion for summary judgment shall file and serve with the opposition papers a . . . 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include *a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement*." Plaintiff has failed to comply with this requirement. As such, the Court cites to Defendants' Local Rule 56(a)1 Statement.

Plaintiff secured her employment with Fairfield Bank through an organization called Ability Beyond, an organization Fairfield Bank worked with that helps secure employment for individuals with disabilities. ECF No. 69 ¶¶ 6–7; McAllister Decl. ¶ 7; Pl.'s Application, Ex. 2, ECF No. 67-1 at 9–10. Nevertheless, Plaintiff's disability was not discussed during the interview process, and although Plaintiff believed the employment application asked questions about what medications she was taking, it did not do so. ECF No. 69 ¶¶ 9–11; ECF No. 67-1 at 8–15. Plaintiff's employment as a teller was at will. ECF No. 69 ¶ 8. Over the course of her employment, Plaintiff was promoted through three positions eventually becoming the highest-tiered type of teller, and was rewarded with raises. ECF No. 78 ¶¶ 12–13; McAllister Decl. ¶ 14.

Plaintiff's only specific communication about her disability with her supervisors Chelsea Rodriguez and Patricia Connelly occurred when she requested, at the end of May of 2023, to leave early from work one day per week to attend counseling for her condition. ECF No. 69 ¶ 12–13; ECF No. 77 ¶ 12; ECF No. 78 ¶ 7. Plaintiff was granted permission to take time off from work to attend these sessions. ECF No. 78 ¶ 9. Plaintiff maintains that Emily Gayton, who worked in Defendant's human resources department, and the executive vice president of human resources, Debra Verbeke, were also aware of Plaintiff's request to leave early once a week to attend counseling, based on Verbeke's response to Plaintiff's interrogatory, which states that "Defendant was only aware of the Plaintiff's request for an adjustment to her work schedule to attend group counseling." ECF No. 77 ¶ 12; Defs.' Interrogatory Responses, Ex. B, ECF No. 76 at 16 (disclaiming knowledge of Plaintiff's psychiatric conditions during the period of her employment). Plaintiff also voluntarily discussed her condition with co-workers, but never made any complaints to her supervisors, managers, or Human Resources about the way her co-workers treated her after they became aware of her condition, or about her condition generally. ECF No. 69 ¶¶ 17–19.

B. Fairfield Bank's Balancing Policy

At all relevant times, Fairfield Bank's policy or expectation was that a teller's cash drawer would balance at the end of each day. *Id.* ¶ 20. Plaintiff contends that Fairfield Bank's policy also required that if a teller's drawer did not balance, another branch employee would count the cash drawer and the verifying employee would be required to initial the teller proof sheet to indicate a difference if one still existed after their count. ECF No. 77 ¶ 20; Teller Differences Policy, Ex. C, ECF No. 76 at 24.[2] At all relevant times, "force balancing," a practice Plaintiff describes as "when you say you balance but you didn't," was strictly prohibited by Fairfield Bank policy. ECF No. 69 ¶¶ 21, 23. Plaintiff contends that Fairfield Bank does not define "force balancing," and that it requires more than a mere counting mistake. ECF No. 77 ¶ 21–23. Fairfield Bank's "Fraud & Dishonest Acts Policy" describes "force balancing" as "deliberately altering physical or computer records to simulate balance in a cash drawer, ATM, vault or branch." ECF No. 67-1 at 88. According to Fairfield Bank, force balancing results in immediate termination and was not subject to any progressive disciplinary policies. ECF No. 69 ¶ 24; ECF No. 76 at 24; *see also* ECF No. 67-1 at 88 (force balancing "may result in disciplinary action, which may include removal from employment or office without warning"). Plaintiff, for her part, contends that when she was hired and trained, she was informed that a progressive disciplinary policy would be utilized, and while forced balancing might be subject to disciplinary action, there was no indication that progressive discipline would not apply in that instance. ECF No. 77 ¶ 24; McAllister Decl. ¶ 34; ECF 67-1 at 65–66.

[2] The Teller Differences Policy has an effective date of December 31, 2018, and indicates that it was revised on January 1, 2024, but the same penalty of immediate termination for force balancing were in place at the time of the events in question. ECF No. 69 ¶ 60. Plaintiff contests this, stating that the "previously issued policy states that forced balances *may* result in discipline," ECF No. 77 ¶ 60, but cites for support the separate "Fraud & Dishonest Acts Policy." ECF No. 77 ¶ 60 (citing Defs.' Ex. 9, ECF No. 67-1 at 88–89).

C. The August 4, 2023, Incident

On August 4, 2023, Plaintiff was working at Fairfield Bank's Madison Avenue branch in Bridgeport, Connecticut. ECF No. 69 ¶ 25. The daily branch's receipts did not balance, due to a shortfall of approximately $66.00. *Id.* ¶ 26; Interoffice Correspondence, Ex. 5, ECF No. 67-1 at 74. It was Plaintiff's responsibility to initially count the loose cash in her drawer and input that total into the computer to generate a Proof Summary Sheet, which would then—if it contained a difference—need to be verified by another branch employee. ECF No. 69 ¶¶ 29–30; ECF No. 77 ¶ 30; ECF No. 76 at 24. Plaintiff testified that she counted her drawer on August 4, 2023, and the drawer was out of balance by an amount she could not recall. ECF No. 69 ¶ 27; Pl.'s Dep. Tr., Ex. 3, ECF No. 67-1 at 49. Plaintiff further testified that after counting all of her cash, she had $66.00 worth of $2 bills in her drawer. ECF No. 69 ¶ 28; ECF No. 67-1 at 56. Plaintiff also testified that she included $66.00 in $2 bills in her count for August 4, 2023. ECF No. 67-1 at 50. But Plaintiff's Proof Summary Sheet for August 4, 2023, which she initialed as a verification of its accuracy, reflects that no value for $2 bills was entered for the sheet that day. ECF No. 69 ¶¶ 32–33; August 4, 2023, Proof Summary Sheet, Ex. 7, ECF No. 67-1 at 80. Plaintiff's Proof Summary Sheets for her drawer from July 28, 2023, through August 3, 2023, all indicate that Plaintiff had $66.00 worth of $2 bills in her cash drawer. ECF No. 69 ¶ 34.

Plaintiff contends that her coworker Veronica Foncello also counted Plaintiff's drawer on August 4, 2023, and Foncello informed Plaintiff that the drawer was balanced. ECF No. 69 ¶ 35. Yet Plaintiff's Proof Summary Sheet for August 4, 2023, does not have any other employee's signature, and Foncello attests that she never counted Plaintiff's drawer. ECF No. 67-1 at 80; Foncello Decl., Ex. 6, ECF No. 67-1 at 77–78. Plaintiff maintains that under Fairfield Bank's policy, Foncello would only have been required to initial Plaintiff's Proof Summary Sheet if there was an imbalance. ECF No. 77 ¶ 36; ECF No. 76 at 24.

Plaintiff believes that Foncello did not count the $66.00 in $2 bills that were in her drawer, and incorrectly told Plaintiff her drawer was balanced. ECF No. 77 ¶ 41; ECF No. 67-1 at 50. Yet Plaintiff did not see Foncello alter her Proof Summary Sheet for August 4, 2023, and had no personal issues or grievances with Foncello. ECF No. 69 ¶¶ 42–44. Moreover, Foncello did not input any numbers or dates into the computer for Plaintiff's drawer or Proof Summary Sheet for August 4, 2023, and Foncello had no personal problems, disputes, or grievances with Plaintiff. *Id.* ¶¶ 46–48. Although Fairfield Bank contends that Foncello was not aware of Plaintiff's request to leave early to receive treatment for her condition, Plaintiff believes she was. ECF No. 77 ¶ 49; McAllister Decl. ¶ 12.

The parties contest whether, at around this time, Plaintiff completely stopped taking medication prescribed by her doctor to treat her condition, but agree that Plaintiff was not taking her medication daily at the time of the events in question, something that was not recommended by her doctor. ECF No. 69 ¶¶ 38–40; ECF No. 77 ¶¶ 38–40; ECF No. 67-1 at 48–49. One of the symptoms Plaintiff experienced was paranoid thoughts, so Defendants contend that Plaintiff's claims against Foncello could be best explained by Plaintiff not taking her medication, rather than by any alleged conduct by Foncello. ECF No. 67 at 10.

D. Disciplinary Action

After another teller reported an issue with underreported cash in the drawer she inherited from Plaintiff on August 4, 2023, Fairfield Bank conducted an inspection of Plaintiff's drawer. ECF No. 77 ¶ 51; Martins Aff., ECF No. 81 at 28, ¶¶ 11–12.[3] An overage of $66.00 was found in

[3] Although Defendants submitted the affidavit of Sandra Martins in connection with their reply brief, the Court properly considers it, as it is directly responsive to an argument raised in Plaintiff's opposition brief concerning the other teller's responsibility for the alleged force balancing, and Plaintiff neither sought leave to file a sur-reply to respond to it, nor moved to strike it. *See Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012795, at *2–3 (D. Conn. Aug. 5, 2013).

Plaintiff's cash drawer by her supervisor, Nichole Barnes. ECF No. 69 ¶ 53; ECF No. 67-1 at 74. Defendants contend this overage in Plaintiff's cash drawer was caused by her reliance on computer totals, rather than a physical count of the cash in her drawer as required by policy, but Plaintiff maintains she counted her cash drawer. ECF No. 69 ¶ 54; ECF No. 77 ¶ 54; McAllister Decl. ¶ 24.

Plaintiff was terminated on September 8, 2023, for the August 4, 2023, events, which Fairfield Bank determined to be a force balancing incident. ECF No. 69 ¶¶ 62, 64; ECF No. 67-1 at 74. While Fairfield Bank contends that Verbeke made the decision to terminate Plaintiff alone, Plaintiff has submitted Verbeke's deposition, in which she claims she consulted Andrea Coreau, Executive Vice President of Retail Banking, about terminating the Plaintiff before making the decision. ECF No. 69 ¶ 63; ECF No. 77 ¶ 63; Verbeke Depo, ECF No. 76 at 83–84. Plaintiff also contests that Verbeke had no knowledge of Plaintiff's disability at the time of Plaintiff's termination, as she had reported her need to leave work early once a week to Gayton, Vice President for Human Resources Administration, who reported to Verbeke and, according to Plaintiff, Gayton would discuss employees' requests for medical leave with Verbeke. ECF No. 77 ¶ 66; ECF No. 76 at 107. Plaintiff could not recall specifically what was said during her termination meeting but assumes she stated that Foncello counted her cash drawer, and thus Foncello should be the one being fired. ECF No. 69 ¶¶ 75–76.

Between August 2, 2017, and May 16, 2023, Fairfield Bank terminated four other employees without any claimed disabilities for force balancing, and one employee had been terminated for the practice of force balancing in an amount less than $2.00, though Plaintiff contends the number of instances of force billing for each of these employees was not provided to her. ECF No. 69 ¶¶ 70–71; ECF No. 77 ¶¶ 70–71.

Finally, Plaintiff alleges she was told during her training that there were both written and oral policies of implementing progressive discipline for employees, including for force balancing incidents, but Plaintiff has not produced a written version of such policy. ECF No. 77 ¶¶ 77–79.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at

324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020)). The Court "may not make credibility determinations or weigh the evidence." *Proctor v. LeClaire*, 846 F.3d 597, 607–608 (2d Cir. 2017) (quoting *Kaytor v. Electric Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Anderson*, 477 U.S. at 250–251).

## III. RIDGEFIELD BANK'S LIABILITY

As an initial matter, the Court finds that Defendant Ridgefield Bank is not liable in this action.

Plaintiff's state court complaint brings each count as against both Fairfield Bank and Ridgefield Bank. *See* Compl., ECF No. 3. In support of their motion for summary judgment, Defendants have submitted an affidavit from Debra Verbeke, which confirms that Ridgefield Bank "is a predecessor corporate entity" of Fairfield Bank and "no longer exists and did not exist at the time of [Plaintiff's] termination." Feb. 25, 2025, Verbeke Decl., Ex. 14, ECF No. 81 at 23. Plaintiff's response to Defendants' Local Rule 56(a)1 statement alleges that "Ridgefield Bank was

a successor company," and thus is liable. ECF No. 77 at 1. But Plaintiff advances no further arguments in its briefing for Ridgefield Bank's liability on any count.

In light of Defendants' declaration that Ridgefield Bank no longer exists and was not in existence at the time of Plaintiff's termination—and Plaintiff's failure to refute these assertions—the Court finds that Plaintiff has failed to raise a genuine dispute of material fact related to Ridgefield Bank's liability and grants Defendants' motion for summary judgment as to Ridgefield Bank. *See Celotex Corp.*, 477 U.S. at 323.

## IV. COUNT ONE: DISABILITY DISCRIMINATION

The Court concludes that Fairfield Bank is entitled to summary judgment on Plaintiff's disability discrimination claims under the ADA and CFEPA.

### A. Legal Standard

"The ADA prohibits 'discriminat[ion] against a qualified individual on the basis of disability.'" *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(a)). Specifically, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Likewise, the CFEPA prohibits discrimination in employment on the basis of disability, except in circumstances not relevant here. *Beason v. United Techs. Corp.*, 337 F.3d 271, 276–78 (2d Cir. 2003) (citing Conn. Gen. Stat. § 46a–60(a)(1)). Evaluation of Plaintiff's ADA and CFEPA claims proceeds under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Green v. Cellco P'ship*, 218 F.Supp.3d 157, 162 (D. Conn. 2016); *DeAngelo v. Yellowbook Inc.*, 105 F.Supp.3d 166, 180 (D. Conn. 2015).

To establish a *prima facie* disparate treatment claim under either the ADA or the CFEPA, a plaintiff must show that: (1) the employer is subject to the ADA or the CFEPA; (2) the plaintiff is disabled within the meaning of the statute or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)); *see also Green*, 218 F. Supp. 3d at 162; *Barbabosa v. Bd. of Educ. of Town of Manchester*, 189 Conn. App. 427, 437 (2019) (relating substantially similar elements under the CFEPA and observing their parallels with the *McDonnell Douglas* framework). To satisfy the final prong of her *prima facie* case, Plaintiff must show that the adverse employment action she experienced "'took place under circumstances giving rise to an inference of discrimination.'" *Davis*, 804 F.3d at 235 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to her employer to "'articulate some legitimate, nondiscriminatory reason'" for its conduct. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802). Once the employer has articulated such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's reason was "a pretext or discriminatory in its application." *Id.* Plaintiff may attempt to show pretext, for example, "by reliance on the evidence comprising the prima facie case, without more, or by demonstrating that similarly situated employees outside the protected class were treated differently." *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 260–61 (S.D.N.Y. 2009) (cleaned up). A plaintiff may also demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 261 (quoting *Droutman v. New York Blood Ctr., Inc.,* No. 03-CV-5384(DRH/ARL), 2005 WL 1796120, at *25 (E.D.N.Y. July 27, 2005)). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Rambacher v. Bemus Point Cent. Sch. Dist.*, 307 F. App'x 541, 543 (2d Cir. 2009) (summary order) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

With respect to the causation standard that applies to Plaintiff's disability discrimination claims, it is settled that a plaintiff must demonstrate "but-for" causation under the ADA. *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019). As to the CFEPA, the parties dispute what causation standard—but-for or "motivating factor"—applies. *See* Pl.'s Opp'n, ECF No. 75 at 9–11; Defs.' Reply, ECF No. 81 at 6–8. The Connecticut Supreme Court has not determined what causation standard applies to employment discrimination claims brought pursuant to the CFEPA and there exists a split of authority within this District as to the standard. *Compare Keithan v. Lakeside Env't Consultants*, LLC, 23-CV-782 (OAW), 2025 WL 2053412, at *8 (D. Conn. July 22, 2025) (acknowledging uncertainty and applying "motivating factor" standard to CFEPA discrimination claims); *Martin v. Master-Halco, Inc.*, No. 3:24-CV-1150 (JCH), 2026 WL 799434, at *3 n.1 (Mar. 23, 2026) (observing that "the motivating factor test is the applicable causation standard for discrimination claims arising under CFEPA."); and *Wallace v. Caring Sol's, LLC*, 213 Conn. App. 605, 612–26 (2022) (recognizing Connecticut Supreme Court has not decided this issue, noting that Connecticut state appellate courts have "always have applied the motivating factor test to discrimination claims under CFEPA," and doing same) *with Fasoli v. Stamford*, 64

F. Supp. 3d 285, 313 (D. Conn. 2014) (applying but-for causation standard from the federal Age Discrimination in Employment Act to CFEPA claims); *see also Vale v. City of New Haven*, 197 F. Supp. 3d 389, 396–99 (D. Conn. 2016) (collecting cases, and ultimately declining to decide which standard applied, as the plaintiff met the more stringent but-for causation test). In previous CFEPA disability discrimination cases, the undersigned has applied the weight of authority in this district—and the consistent holdings of the Connecticut appellate courts—that the "motivating factor" standard applies, and sees no reason to depart from such holdings here.[4] Accordingly, the Court agrees with Plaintiff that under the CFEPA, she need only show that disability discrimination was a motivating factor for the adverse action.

B. Analysis

As an initial matter, the Court disagrees with Fairfield Bank's contention that the *McDonnell Douglas* burden-shifting framework is not applicable here, because "plaintiff has offered only her bare speculation" that she was terminated for discriminatory reasons. Defs.' Reply, ECF No. 81 at 8. Although the Second Circuit has noted that *McDonnell Douglas* is "not helpful" when it is undisputed that an employer took adverse action against an employee because of her disability, *see McMillan*, 711 F.3d at 129, here the parties dispute whether Fairfield Bank terminated Plaintiff because of her disability or, instead, because of her alleged force balancing. Given this dispute, *McDonnell Douglas* is the correct framework.

*1. Step One: Prima Facie Case*

First, the Court holds that Plaintiff has satisfied her *prima facie* case.

---

[4] *See Murray v. Wal-Mart Stores East,* LP, No. 3:23-CV-1019 (SVN), 2025 WL 26625060, at *10 (D. Conn. Sept. 17, 2025); *Falvey v. Ocean Surveys, Inc.*, No. 3:23-CV-1013 (SVN), 2025 WL 754037, at *7 (D. Conn. Mar. 10, 2025).

Fairfield Bank has not challenged that it is subject to the ADA/CFEPA; that Plaintiff's condition constitutes a disability under the ADA and CFEPA; that Plaintiff was otherwise qualified to perform the essential functions of her role; or that she suffered an adverse employment action. Accordingly, the only part of Plaintiff's *prima facie* case at issue is whether Plaintiff was terminated because of her disability under circumstances giving rise to an inference of discrimination.

To establish the fourth element of a *prima facie* case of disability discrimination, "a plaintiff must provide evidence that would allow a reasonable juror to infer discrimination, such as disparate treatment, comments from an employer, or the sequence of events." *Lazzari v. City of New York Dep't of Parks & Recreation*, No. 15-cv-8638 (WHP), 2017 WL 4417696, at *3 (S.D.N.Y. Oct. 3, 2017), *aff'd*, 751 F. App'x 100 (2d Cir. 2018). Courts must carefully distinguish between evidence giving rise to an inference from "mere speculation and conjecture." *Id.* at 2 (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)). At the same time, however, a plaintiff's *prima facie* burden is "minimal." *Primmer*, 667 F. Supp. 2d at 256 (*quoting Regional Econ. Cmty. Action Prog. v. City of Middletown*, 294 F.3d 35, 50 (2d Cir. 2002)); *see also Dawson v. N.Y. City Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015) (summary order) (citing Title VII cases in an ADA discrimination matter for the proposition that the *prima facie* burden is "not onerous" and *de minimis*) (citations omitted).

Plaintiff offers two facts she argues give rise to an inference of discrimination: (1) she was terminated within ninety days of informing Fairfield Bank about her need for weekly treatment for her disability and (2) a coworker whose cash drawer reported a $66.00 overage on the day in question and who did not have a disability was not terminated. ECF No. 75 at 18–21. As to the first reason, Plaintiff confuses the standard for inferring *retaliation* from the standard for inferring

*discrimination*. *See id.* at 18–19 (citing to retaliation case law and arguing Plaintiff's termination came ninety days after her "protected status/activity"). But Plaintiff did not allege a retaliation claim in her state court complaint, or at any time prior to her opposition to Defendants' motion for summary judgment; nor has she sought leave of the Court to amend her complaint to add such claim. Thus, she may not raise it now for the first time. *See* Fed. R. Civ. P. 15(a)(2) (when seeking leave to amend more than 21 days after service, "a party may amend its pleading on with the opposing party's written consent or the court's leave"); *Travelers Cas. and Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 82 (S.D.N.Y. 2010) (finding that a party could not raise a new claim in opposition to a motion for summary judgment).

Nevertheless, in the context of other types of discrimination claims, including particularly pregnancy discrimination, temporal proximity between a plaintiff's termination and the defendant's learning of the medical condition can support an inference of discrimination. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020) (collecting cases in the pregnancy discrimination context); *Baron v. Advanced Asset and Prop. Management Sols, LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014) ("courts in this circuit have held that the temporal proximity of an employee's disclosure of a disability to his termination support an inference of discrimination"). Here, Plaintiff contends that she has made her *prima facie* showing of disability discrimination because she was terminated within ninety days of making a request for time off to attend counseling sessions for her psychiatric conditions. The Court notes that Fairfield Bank knew Plaintiff had applied for work through Ability Beyond, an organization that serves people with disabilities, and that Fairfield Bank promoted her throughout her tenure despite this knowledge.[5] This evidence weighs against an inference of discrimination on the basis of Plaintiff's

---

[5] Verbeke attests, however, that she did not have "specific knowledge of the nature of [Plaintiff's] claimed disability or her diagnosis or mental health condition." Verbeke Aff., ECF No. 67-1 at 6, ¶ 28.

disability. But given that the *prima facie* burden is minimal, the Court credits Plaintiff's argument that there is sufficient temporal proximity—90 days—between her request for time off to treat her disability and her termination to give rise to an inference of discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (finding, in the retaliation context, that "five months is not too long to find the causal relationship," while acknowledging that the Second Circuit has not "drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation").

As to Plaintiff's second reason, she contends that two non-disabled employees were not terminated for force balancing in connection with the events of August 4, 2023: (1) Foncello and (2) Isabelle Ovilme, who inherited Plaintiff's cash recycler later that day and reported a variance in the cash present. ECF No. 75 at 20–21. First, with respect to Foncello, the Court acknowledges there is a factual dispute about whether she counted the money in Plaintiff's drawer on August 4, 2023, and verified that Plaintiff's count was accurate: Plaintiff says she did, and Foncello says she did not. Resolution of this factual question necessarily requires assessment of Plaintiff's and Foncello's credibility, and cannot be resolved on summary judgment. *See Proctor*, 846 F.3d at 607.

But even fully crediting Plaintiff's version of events, Plaintiff has not shown that Foncello was similarly situated to Plaintiff in all material respects, such that an inference of discrimination can be drawn from their different treatment. *See, e.g.*, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (quotation marks and citation omitted); *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997) (same). To be similarly situated in "all material respects," Plaintiff must "show

that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Plaintiff states that Foncello is a "branch representative," and a "co-worker," of Plaintiff's, *see* ECF No. 78 ¶¶ 18–19, but makes no argument that Foncello is a teller subject to the same rules and regulations as Plaintiff.[6] Additionally, Plaintiff points to no evidence suggesting that, under Fairfield Bank's policy, the person who doublechecks a teller's count, as Plaintiff contends Foncello did, would bear responsibility for reporting an inaccurate balance. Finally, Plaintiff fails to contend with the fact that Plaintiff herself initialed the Proof Summary Sheet showing an absence of any $2 bills in her cash box on August 4, 2023. The ultimate act of finalizing and printing the Proof of Summary Sheet was with Plaintiff, and any mistaken counting or indication that the sheet was balanced ultimately lay with Plaintiff. Accordingly, it cannot be said that Foncello also participated in the alleged force balancing. For these reasons, Plaintiff's efforts to raise an inference that Defendant terminated Plaintiff on the basis of her disability based on Defendant's failure to terminate Foncello for the events of August 4, 2023, fail.

As to Ovilme, who was a teller and thus is similarly situated to Plaintiff, there is no evidence in the record to support the fact that she participated in force balancing. Plaintiff does not assert a theory of how Olvilme participated in force balancing other than alleging that Olvilme

---

[6] Indeed, Foncello's affidavit establishes their positions were different: Foncello's title at the relevant time as "Business Services Specialist," Foncello Aff., ECF No. 67-1 at 77, ¶ 2, while Plaintiff was a "certified professional teller," ECF No. 78 ¶ 2.

was in charge of cash recycler No. 270 at the end of the day on August 4, 2023, which reflected a shortage of $66.00. ECF No. 75 and 20–21. But Olvilme *reported* a variance in cash recycler No. 270, as required under Defendants' policy; she did not attempt to force balance or otherwise negate a variance that existed at the end of the day. Martins Aff., Ex. 15, ECF No. 81 at 28–29; ECF No. 67-1 at 72 ("All differences, regardless of the amount, must be reported to Branch Management and posted in Insight"); ECF No. 67-1 at 90 (showing "Cashbox Variance" of "-66," initialed by "IO"). Thus, rather than attempt to force balance, it appears Olvilme followed Defendants' required procedure to report it, leaving Plaintiff with no grounds to justify her assertion that Olvilme should have been terminated but was not, while Plaintiff was terminated due to her disability.[7]

Finally, Defendants have established that four other employees without any claimed disabilities were terminated for force balancing between August 2, 2017, and May 16, 2023. ECF No. 69 ¶ 70. Thus, not only were Foncello and Ovilme *not* treated differently than Plaintiff on account of the fact that they did not have any claimed disabilities, but Defendants have demonstrated that they consistently terminated individuals, regardless of their disability status, for the exact offense Plaintiff is alleged to have committed. Plaintiff states that it is not clear what amount the force balance was with these other terminations, or how many offenses each person committed before termination. ECF No. 77 ¶ 70. However, Defendants do provide some indication of the amounts in question when they explain that one of the four employees was terminated for force balancing an amount less than $2.00. ECF No. 67 at 9. Regardless, the amount of the force balance is irrelevant to the question of whether Defendants terminated individuals for the same offense and, further, Plaintiff has not alleged that Defendants provided

[7] Plaintiff does not allege that Olvilme took money out of or otherwise impacted Plaintiff's cash drawer, or that she edited Plaintiff's Proof of Summary Sheet.

other individuals without disabilities more opportunities for correction before termination; instead, she has alleged that other non-disabled individuals were *not terminated* for the same offense. ECF No. 75 at 20–21.

Thus, the Court concludes that Plaintiff has demonstrated a *prima facie* claim of disability discrimination, albeit barely. The Court therefore moves ahead to the second step of the *McDonnell Douglas* analysis.

2. *Step Two: Legitimate Non-Discriminatory Reason*

Defendants have provided a legitimate non-discriminatory reason for Plaintiff's termination: Plaintiff was terminated due to force balancing on the day in question, which is grounds for immediate termination under Fairfield Bank's "Teller Differences" Policy. *See* ECF No. 69 ¶ 64; ECF No. 76 at 24. Thus, the Court proceeds with step three of the analysis.

3. *Step Three: Pretext and Ultimate Burden*

Given that Defendants have offered a legitimate non-discriminatory reason for Plaintiff's termination, the burden of production shifts back to Plaintiff to "'produce evidence and carry the burden of persuasion that the proffered reason is a pretext.'" *McBride*, 583 F.3d at 96 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). To demonstrate pretext, a Plaintiff must "introduce evidence from which a reasonable juror could conclude that [an employer's] real motivation was discrimination." *Stefanidis v. Jos. A. Bank Clothiers, Inc.*, No. 3:14-CV-971 (VAB), 2016 WL 845297, at *5 (D. Conn. Mar. 2, 2016) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (Title VII case)); *see also Greene v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 606 F. App'x 624, 626 (2d Cir. 2015) (applying same standard in ADA context). The presumption of discrimination raised by Plaintiff's *prima facie* case is considered rebutted and drops from the case. *Greene*, 606 F. App'x at 626 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 507)).

At step three, Plaintiff relies primarily on the evidence discussed above in her *prima facie* case to show she will meet her ultimate burden: that there was temporal proximity between when Plaintiff disclosed that she needed to go to group therapy sessions once a week and when she was terminated, and that similarly situated non-disabled individuals were treated differently than her. ECF No. 75 at 24–25. While a plaintiff is entitled to rely on the same evidence she used for her *prima facie* case to carry her burden at step three, "it is well established that 'temporal proximity is not sufficient to show pretext.'" *Hardekopf v. Sid Wainer & Son*, No. 02 Civ. 3251 (LAP), 2004 WL 2199502, at *7 (S.D.N.Y. Sept. 29, 2004) (collecting cases and quoting *Sasannejad v. Univ. of Rochester*, 329 F. Supp. 2d 385, 393 (S.D.N.Y. 2004)). As discussed above, too, the inference Plaintiff seeks to draw from the temporal proximity is weakened by the fact that Defendant knew Plaintiff had applied for work through an organization that provides employment services for people with disabilities, and promoted her—with that knowledge—throughout her tenure at the bank. Thus, even if Verbeke did not know the specifics of Plaintiff's particular disability, Fairfield Bank very likely knew she had a disability for years before the August 4, 2023, incident. And for the same reasons discussed above, Plaintiff's arguments with respect to the failure to terminate Foncello and Ovilme are unpersuasive.

Plaintiff further argues that her positive job reviews——including that she was proficient and accurate at balancing her cash drawer—and series of promotions demonstrate that she was a strong worker, rendering the allegations of force balancing against her mere pretext for disability discrimination. ECF No. 75 at 25–26; Pl.'s Perf. Reviews, Ex. F, ECF No. 76 at 40–49. But Plaintiff has not provided any performance reviews that post-date Defendants' alleged discovery of her disability, with the latest performance review being dated July 29, 2022. ECF No. 76 at 49. Thus, Plaintiff has not put forward evidence of declining reviews or a material impact in her

evaluations following the time when Plaintiff alleges Defendants became aware of her need for treatment for her disability. *See Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 381 (E.D.N.Y. 2015) (pretext with respect to performance reviews may be determined by comparison and decline in review positivity post-dating disclosure of disability).

Finally, Plaintiff argues that Defendants could not actually "confirm whether [Defendants] had reviewed any videotape to determine whether the plaintiff failed to count her cash drawer." ECF No. 75 at 26. In other words, Plaintiff argues that Defendants could have gotten it wrong when they accused her of force balancing. But so long as an employer holds a "good faith *belief* that an employee engaged in misconduct," that is "a legitimate reason" for that employee's termination and "the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is pretext for discrimination." *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 334 (D. Conn. 2014) (citing *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 238 (E.D.N.Y. 2012)). Plaintiff's alleged force balancing—corroborated by her initialed Proof Summary Sheet showing an absence of any reported $2 bills in her cash drawer on the day in question, when the audit discovered the drawer in fact had $66.00 in such bills—is exactly such a reason, and she has failed to put forward any evidence to demonstrate that Defendants' belief that she engaged in force balancing was not held in good faith.[8] *See St. Mary's Honor Ctr.*, 509 U.S. at 515 ("a reason cannot be proved to be pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason") (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981)). And although Plaintiff may believe that she should have been subjected to progressive discipline rather than termination of employment, "the fact that

[8] Indeed, since Plaintiff testified that she did count the $66.00 in $2 bills, but nonetheless failed to record them on her Proof Summary Sheet, *see* ECF No. 67-1 at 42, 50, 54, Defendant did not terminate her merely for miscounting. It terminated her for failing to properly record the amount of cash in the Proof Summary Sheet, to simulate balance—*i.e.*, force balancing. *See* ECF No. 67-1 at 3, ¶ 11.

Defendants chose to impose a harsher sanction than [Plaintiff] thought appropriate does not tend to suggest" that Plaintiff's disability was a but-for or motivating factor for her termination, "especially in the absence of any written or clear and definite progressive discipline policy." *Garcia v. Altice Tech. Servs, LLC*, No. 3:21-CV-522 (JAM), 2023 WL 22495, at *7 (D. Conn. Jan. 3, 2023).

At bottom, Plaintiff fails to put forward any evidence supporting her claim that Defendants terminated her because of her disability except weak temporal proximity between her alerting Defendants to the need for her to attend treatment for her disability and her termination. She has not shown that Defendants' legitimate, non-discriminatory reason for terminating her was a mere pretext for disability discrimination. Indeed, four non-disabled employees who committed the same acts Fairfield Bank believe Plaintiff committed were likewise terminated. Accordingly, Plaintiff has failed to carry her burden at step three, and no reasonable jury could conclude that Defendants discriminated against her based on her disability. This is the case under both the ADA's but-for causation standard and the CFEPA's motivating factor standard.

Because Plaintiff cannot establish a genuine dispute of material fact concerning whether she was discriminated against by Defendant on the basis of a disability, Defendants' motion for summary judgment is granted as to Count One. *See Patterson*, 375 F.3d at 221 ("if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate").

## V. SUPPLEMENTAL JURISDICTION

This matter was removed to federal court because Plaintiff alleged a claim under the ADA. Now that Defendants have been granted summary judgment on the federal ADA claim, only state law claims remain. Nevertheless, the Court finds that exercising supplemental jurisdiction over

Plaintiff's remaining state law negligent misrepresentation and promissory estoppel claims is appropriate.

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Under § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Additionally, even where one of the section 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that to exercise such jurisdiction would not promote economy, convenience, fairness, and comity. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 214 (2d Cir. 2004)).

Here, the factors permitting the Court to decline to exercise supplemental jurisdiction do not counsel in favor of dismissal of Plaintiff's remaining state law claims. Plaintiff's negligent misrepresentation and promissory claims do not raise any complex or novel issues of state law, nor do they substantially predominate over her ADA claim. While the Court has dismissed Plaintiff's sole federal claim, there do not exist other compelling factors that could counsel in favor of declining to exercise supplemental jurisdiction. Further, exercising supplemental jurisdiction here would promote judicial economy, fairness, and comity, as this case has proceeded entirely

through the discovery process and is at the summary judgment stage. To dismiss Plaintiff's state law claims only for the process to start over again in the state courts would waste valuable judicial resources. Accordingly, the Court exercises supplemental jurisdiction over Plaintiff's remaining state law claims.

## VI. NEGLIGENT MISREPRESENTATION

The Court finds that Plaintiff has not demonstrated a genuine issue of material fact on her negligent misrepresentation claim and grants Defendants' motion for summary judgment as to this count. Plaintiff's negligent misrepresentation claim alleges that Defendants "orally represented" to her that they had "in place a progressive disciplinary policy," and that she would "not be discharged without application of the progressive disciplinary policy." Compl., ECF No. 3 at 11.

"A negligent misrepresentation claim requires a plaintiff to establish '(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result.'" *Garcia*, 2023 WL 22495, at *7 (quoting *Stuart v. Freiberg*, 316 Conn. 809, 822 (2015)).[9]

It is undisputed that Defendants' Fraud and Other Dishonest Acts Policy states that violations of the policy "may result in disciplinary action, which may include removal from employment or office *without warning*." ECF No. 67-1 at 88 (emphasis added); ECF No. 77

[9] There is a split of authority in the District as to whether negligent misrepresentation claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud-based claims. *Ferry v. Mean Johnson & Co., LLC*, 514 F. Supp. 3d 418, 446 (D. Conn. 2021) (collecting cases). But there is agreement that "when 'negligent misrepresentation is couched in fraud-like terms of known falsity,' the heightened fraud pleading standard applies." *Id.* (quoting *Karazin v. Wright Med. Tech., Inc.*, 2018 WL 4398250, at *7 (D. Conn. Sept. 14, 2018) and citing *ARMOUR Capital Mgmt. LP v. SS&C Techs., Inc.*, 2020 WL 64297, at *2 (D. Conn. Jan. 5, 2020)). As the parties have not raised this issue, the Court does determine whether Rule 9(b)'s heightened pleading standard is implicated here.

¶ 58.[10] Nevertheless, Plaintiff alleges that "a now retired female employee" told her during training that Defendants followed a progressive discipline policy, and Plaintiff "assumed" that such policy "covered everything" including force balancing. ECF No. 67-1 at 65–66. As to the first required element of a negligent misrepresentation claim, then, it is unclear whether Defendants even made a misrepresentation, as it is Plaintiff's own testimony that she "assumed" that Defendants' progressive termination policy would apply to the specific act of force balancing. ECF No. 67-1 at 65–66. While Plaintiff has also claimed this policy was written, no such written policy has been included in the record, and even Defendants' Fraud and Other Dishonest Acts policy—which Plaintiff cites to for support—permits termination without warning for covered violations. ECF No. 67-1 at 65; ECF No. 67-1 at 88. Further, Plaintiff has not provided any information about *who* the speaker was, whether she had the authority to represent Defendants' policy or views, or any other identifying information. Accordingly, Plaintiff cannot satisfy the first element of her negligent misrepresentation claim.

Nevertheless, even assuming Plaintiff had sufficiently alleged that Defendants made a misrepresentation, she has not demonstrated that Defendants knew or should have known the statement was false when made. "To survive summary judgment, a plaintiff [alleging a claim for negligent misrepresentation] must be able to point to evidence indicating that the speaker of the misrepresentation 'knew, or should have known, [the] statements were untrue *at the time they were made.*'" *Soares v. Altice Tech. Servs. US, LLC*, No. 3:19-CV-1975 (JBA), 2021 WL 3475704, at *6 (D. Conn. 2021) (quoting *Bellsite Dev., LLC v. Town of Monroe*, 155 Conn. App. 131, 152

[10] Defendants have also submitted the Teller Differences policy, which clearly states that "[f]orce balancing is strictly prohibited and will result in immediate termination." ECF No. 67-1 at 72. Plaintiff denies that this policy was in effect at the time of the events in question, and argues that the "previously issued policy states that forced balances may result in discipline," citing to Defendants' Exhibit 9, the Fraud and Other Dishonest Acts policy. ECF No. 77 ¶ 60. Given that the Fraud and Other Dishonest Acts policy expressly states that "removal from employment or office without warning" is a possible consequence of misbehavior, Plaintiff's argument holds no weight.

(2015) (emphasis in original)). Plaintiff has set forth no facts indicating that the unidentified speaker knew or should have known her statements were false at the time she made them; in fact, Plaintiff testifies to the opposite: that she imported her own assumption into the representation that was made. ECF No. 67-1 at 65–66.

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's negligence misrepresentation claim.

## VII. PROMISSORY ESTOPPEL

Finally, the Court concludes that Defendants' motion for summary judgment must be granted on Plaintiff's claim for promissory estoppel, as well. Like with her negligent misrepresentation claim, Plaintiff's promissory estoppel claim contends that that she relied upon oral statements of Defendants with respect to the existence of a progressive discipline policy, to her detriment. ECF No. 3 at 12.

"Promissory estoppel is asserted when there is an absence of consideration to support a contract." *Glazer v. Dress Barn, Inc.,* 274 Conn. 33, 88 (2005). A claim of promissory estoppel requires "the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Torringford Farms Ass'n, Inc. v. City of Torrington*, 75 Conn. App. 570, 575 (2003). "'To prevail in a cause of action sounding in promissory estoppel, a plaintiff must convince the jury that (1) the promisor has failed to honor a clear and definite promise that (2) the promisor reasonably should expect to induce detrimental action or forbearance on the part of the promisee or a third person, and (3) the promise does, in fact, induce detrimental action or forbearance in reasonable reliance on the promise.'" *Garcia*, 2023 WL 22495 at *7 (quoting *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 209 (2021)).

Plaintiff has failed to establish that there is a genuine dispute of material fact as to whether Defendants failed to honor a clear and definite promise. Plaintiff's declaration states that "a progressive disciplinary policy would be used for discipline." McAllister Decl. ¶ 34. Nowhere, however, has Plaintiff explained what exactly Defendants' alleged promise would entail. There is no written progressive discipline policy in the record (and, indeed, Plaintiff's complaint states that the representation was made orally only). It is therefore unclear what the contours of any alleged promise were—much less that they were clear and definite. Further, as detailed above, in her deposition, Plaintiff confirmed that no one explicitly told her any progressive discipline policy would apply to force balancing, but rather she "just assumed that it covered everything." ECF No. 67-1 at 65–66. This case is unlike *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 106 (2003), on which Plaintiff relies heavily. In *Stewart*, the defendant's representative promised in "unambiguous terms" that the plaintiff's husband's prospective employment with one of defendant's competitors would pose "no problems whatsoever" for plaintiff's employment, and yet the defendant reduced the plaintiff's duties and ultimately terminated her after her husband took the new job. *Id.* at 99–100, 103, 106. Here, there was no such unambiguous statement from Defendants constituting a clear and definite promise.

Thus, the Court finds that Plaintiff has not pointed to any evidence supporting a genuine issue of material fact with respect to her promissory estoppel claim. As a result, Defendants' motion for summary judgment is granted as to Plaintiff's promissory estoppel claim.

## VIII. CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment is GRANTED in full. The Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 24th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE